FILED

2023 Mar-13  AM 09:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

Pro Se General Complaint for a Civil Case (Rev.10/16)

# United States District Court
## for the
### NORTHERN DISTRICT OF ALABAMA

2023 MAR 10  P 4: 49

*Roberta Bailey*
**Plaintiff**
*(Write your full name. No more than one plaintiff may be named in a pro se complaint)*

v. *City Of Birmingham*
*100 City Hall Bld*
*710 North B'nam Al.*
*35203*

**Defendant(s)**
*(Write the full name of each defendant who is being sued. If the names of all defendants cannot fit in the space above or on page 2, please write "see attached" in the space and attach an additional page with the full list of names)*

Case No.: **2:23CV302-AMM**
*(to be filled in by the Clerk's Office)*

JURY TRIAL ☑ Yes  ☐ No

## COMPLAINT FOR A CIVIL CASE

I.  **The Parties to This Complaint**

A.  **The Plaintiff**
   Name  *Roberta Bailey*
   Street Address  *1452 Freda Drive*
   City and County  *Midfield Al*
   State and Zip Code  *Birmingham Al.*
   Telephone Number  *35228*

B.  **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization or a corporation. If you are suing an individual in his/her official capacity, include the person's job or title. Attach additional pages if needed.

Pro Se General Complaint for a Civil Case (Rev. 10/16)

Defendant No. 1
    Name           Randall Woodfin
    Job or Title      Mayor B'ham
    Street Address   710 North 20th St
    City and County  B'ham Al Jefferso
    State and Zip Code Al. 35203

Defendant No. 2
    Name           Brain Kilgore
    Job or Title      Att / city of B'ham
    Street Address   710 North 20th St
    City and County  B'ham Al Jefferson
    State and Zip Code Al 35203

Defendant No. 3
    Name           Rozalind Simon
    Job or Title      City Att
    Street Address   710 North 20th Street
    City and County  B'ham Jefferson
    State and Zip Code Al 35203

Defendant No. 4
    Name           Whitney Seals
    Job or Title      Attorney
    Street Address   Pate & Cochrun LLP
    City and County  P.O. Box - 10448
    State and Zip Code 205 - 323 - 3900

Pro Se General Complaint for a Civil Case (Rev. 10/16)

Defendant No. 5
    Name     *Alabama Workers Compensation*
    Job or Title     *Workers Law Enforcements,*
    Street Address     *649 Monroe Street*
    City and County     *Montgomery Al road i~~~*
    State and Zip Code     *3615/*

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only these types of cases can be heard in federal court: a dispute that involves a right in the United States Constitution or a federal law (as opposed to a state law or local ordinance); a dispute that involves the United States of America (or any of its agencies, officers or employees in their official capacities) as a party; and a dispute between citizens of different states with an amount in controversy that is more than $75,000.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Constitutional or Federal Question    ☒ USA Defendant    ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.   If the Basis for Jurisdiction is USA defendant

The Defendant(s)
Name of Agency *City of Birmingham*
Address *100 City Hall Bld Bham Al. 35203*

### B.   If the Basis for Jurisdiction is a Constitutional or Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

*Contempt of Court, Obstruction of governmental Operations, Abuse of Power, Abuse of Power to Obstruction of governmental Operations*

Attachment 8

Spencer Attorney    B'ham
PIZZA    Attorney

Id A Thatch Attorney
B'ham Ofcr    B'ham Al.

Judge    French    Circuit Cout
Perciding    Judge    Jeff.
Retrailed    my Case

James    Love
City    of B'ham
710 North 20th street

James    Love
City    of B'ham
710/20th    North

**C.    If the Basis for Jurisdiction is Diversity of Citizenship**

1.  The Plaintiff

    The plaintiff, *(name)* _Roberta Bailey_, is a citizen of the
    State of *(name)* _United States America_

2.  The Defendant(s)

    a.  If the defendant is an individual

        The defendant, *(name)* _Whitney Seals_, is a citizen of the
        State of *(name)* _Alabama_. Or is a citizen of
        *(foreign nation)* _____

    b.  If the defendant is a corporation

        The defendant, *(name)* _City of Birmingham_, is incorporated under
        the laws of the State of *(name)* _Alabama_, and has its
        principal place of business in the State of *(name)* _City Hall City of Bham_

        Or is incorporated under the laws of *(foreign nation)*
        _____, and has its principal place of
        business in *(name)* _____

    *(If more than one defendant is named in the complaint, attach an additional
    page providing the same information for each additional defendant.)*

3.  The Amount in Controversy

    The amount in controversy – the amount the plaintiff claims the defendant
    owes or the amount that is at state – is more than $75,000, not counting
    interest and costs of court, because: *(explain)*

    _I won my cases was granted
    my disability pension from the City of
    Bham. Also I won my retaliation
    discrimination case. City of Bham
    Never paid my court orders.
    Comtempt of Court Orders/DGO._

**III.    Statement of Claim**

Write a short and plain statement of the claim. Briefly state the facts showing that the plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Went to Court won my Cases City of B'ham Has Refused to pay to Compersotory damages punitive damages Pain/suffering Want before Judge French etc. Elizabeth french - fail my Case two Twice to take away my Benefits that's already Been granted the lost of ability to Care for my Self, declining Health.

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks for the court to order. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive (punishment) or exemplary (warning or deterrent) damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Loosing my health ability to care for Self, Pain all day every day. Lost my Car Home Jewelry. Self Respect for my Self Embarrassment to loose my Job, only source I had to take care of my family Loose the ability to write, Handle daily activtiss. Lost my business not able to give to the Church

Pro Se General Complaint for a Civil Case (Rev.10/16)

## V.    Certification and Closing

Under Rule 11 of the Federal Rules of Civil Procedure, by signing below, I certify to the best of my knowledge, information, and belief that this complaint; (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in dismissal of my case.

First Name _Roberta_  Last Name _Bailey_

Mailing Address _1952 Heda Ai Drive_

City and State _Midfield AI_  Zip Code _35228_

Telephone Number _205-500-3150_

E-mail Address _Chocolaterose650@gmail.com_

Signature of plaintiff _Roberta Bailey_

Date signed _03/10/2023_

## **OPTIONAL**

You may request to receive electronic notifications. You <u>may not</u> file documents or communicate with the court electronically. All documents must be submitted in <u>paper</u> and you must serve the defendants.

Type of personal computer and related software/equipment required:

- Personal computer running a standard platform such as Windows or Mac OSX
- Internet access (high speed is recommended)
- A Web browser (Microsoft Internet Explorer 7.0 or 6.0 or Mozilla Firefox 2 or 1.5)
- Adobe Acrobat Reader is needed for viewing e-filed documents
- PACER account – Information and registration at www.pacer.gov

- You will receive one "free" look of the document. Documents must be viewed within 14 days. You must only single-click on the hyperlink to view.

**Note: You must promptly notice the Clerk's Office, in writing, if there is a change in your designated e-mail address. Failure to update your email address does <u>not</u> excuse failures to appear or timely respond.**

E-mail type:

☐ HTML – Recommended for most e-mail clients

☐ Plain Text – Recommended for e-mail accounts unable to process HTML e-mail

Conditioned upon the sufficiency of your electronic equipment which the court will test and verify receipt, you will be allowed to receive electronic notifications.

By submitting this request , the undersigned consents to electronic service and waives the right to personal service and service by first class mail pursuant to Rule 5(b)(2) of the Federal Rules of Civil Procedure, except with regard to service of a summons and complaint.

When a filing is entered on the case docket, a party who is registered for electronic noticing will receive a Notice of Electronic Filing in his/her designated e-mail account. The Notice will allow one free look at the document, and any attached .pdf may be printed or saved.

IMPORTANT:

Messages sent to Yahoo or AOL accounts are frequently found in the spam folder until the court is added to your address book.

E-mail address designated for noticing:

_Chocolaterose_65@gmail.com_

Participant signature: _Roberta Baily_

Date: _10/3/2023_



ELECTRONICALLY FILED
8/13/2018 2:59 PM
01-CV-2010-904250.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## CIVIL DIVISION

| | | |
|---|---|---|
| ROBERTA BAILEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No.:   CV-2010-904250.00 |
| | ) | |
| CITY OF BIRMINGHAM, | ) | |
| Defendant. | ) | |

### WORKERS COMPENSATION DECREE

This matter was called for trial on the merits of Plaintiff's claim for benefits under the Alabama Workers Compensation Act, *Ala. Code §§25-5-1 et seq (1975)* on August 6, 2018[1]. The Court received the sworn testimony of witnesses and certain documents into evidence during the course of an *ore tenus* proceeding, at which the Court had full opportunity to hear the testimony and to observe the witnesses in making credibility determinations with regard to their testimony. The Court hereby finds the following:

*Evidentiary Summary*

The Court's finding of facts is based on the testimony of witnesses and the documents introduced into evidence.

**Sherry Waddell.** The Court received the sworn testimony of Ms. Sherry Waddell who is a longtime friend and acquaintance of Plaintiff, having known her for 18-20 years. She testified that she is called upon to take Plaintiff to meet her doctor appointments and renders assistance to Plaintiff as she performs her daily chores, such as grocery shopping. Ms. Waddell testified, based upon her observations, that Plaintiff experiences a great deal of pain. Ms. Waddell is not a medical doctor, admittedly.

Ms. Waddell testified to an episode in which Plaintiff suffered a cardiac problem following one of her nerve blocs.

Ms. Waddell testified that there is very little that Plaintiff can now do, physically, such as her housework, due to her physical pain. She testified that that Plaintiff tries to

---

[1] The Court has considered that in a handwritten document filed in this case on September 19, 2014 that Plaintiff amended her complaint to add a count for retaliatory discharge under the provisions of *Ala. Code §25-5-11.1 (1975)* which shall be tried separately.

help her condition by walking and doing exercises. Ms. Waddell testified that Plaintiff takes her meals with her because Plaintiff cannot cook.

Ms. Waddell testified that Plaintiff has several aids such as a back brace, a neck brace and a cane that she uses from time to time to help her ambulate. The Court notes that during the trial of this case, Plaintiff did not wear a neck brace nor was she assisted by use of a walker or a cane.

Ms. Waddell testified that she knew of Plaintiff's attempt to return to work on March 3, 2014 and that in her opinion, Plaintiff should not have made the effort as, in her opinion, Plaintiff was not able to return.

Ms. Waddell testified that following the February 16, 2010 incident at work[2], Plaintiff's physical condition "went down" quickly and that her physical condition has gotten worse since. In 2010, Plaintiff experienced neck spasms and that she was "bed bound". Plaintiff received three nerve blocs during calendar year 2010 for the injuries she sustained in the said February 16, 2010 incident.

**Allen Lewis.** The Court then received the sworn testimony of Mr. Allen Lewis. Mr. Lewis testified that he drove Plaintiff on occasions when Plaintiff could not drive. But then, during the course of his testimony, Mr. Lewis became confused and admitted that he could not accurately offer testimony to the Court. Plaintiff did introduce into evidence a copy of her job description which she held at the time of her injury. She was a Recreation Leader employed with the City of Birmingham Park and Recreation Board.[3] Plaintiff also introduced into evidence a note from Dr. James G. Langan, dated July 14, 2014 which stated that "Patient has a number of medical problems. At this time . . ." the balance of the note is not legible.[4]

**Kevin Moore.** The Court then received testimony from Mr. Kevin Moore. Mr. Moore testified that as of January 27, 2014 he has been the Director of the Birmingham Park and Recreation Board. He testified that Plaintiff was required to return to work on March 10, 2014 and when she failed to report for work on March 10-13, 2014, she was considered Away from Work without Leave (AWOL). Mr. Moore testified that the

---

[2] Previously determined by the Court's order of August 5, 2011, following a compensability hearing, to be not compensable.
[3] Plaintiff Exhibit #1
[4] Plaintiff Exhibit #2

March 10, 2014 date was used based on a note from Dr. Ajnetta L. Foster of Birmingham Family Wellness, LLC who stated on March 4, 2014 that at that time, Plaintiff was under her medical care and that Plaintiff could return to light duty work on March 10, 2014.[5]

Plaintiff presented a medical note from Dr. Thomas Powell, dated March 13, 2014 stating that Plaintiff's work status would "Remain at same".[6] Dr. Powell is an orthopedic doctor who was treating Plaintiff for her left shoulder regarding the December 12, 2012 incident, also made a basis for Plaintiff's claim.

Mr. Moore testified that the protocol for an injured worker returning to work was to bring with them a doctor's order indicating that the worker may return to work and the date upon which the worker may return.

**Roberta Bailey.** The Court then received the sworn testimony of the Plaintiff, Ms. Roberta Bailey. Ms. Bailey testified that she was employed with the City of Birmingham as a Recreation Leader under the Park and Recreation Board. She detailed all of the activities that her job required her to perform which included a number of physical activities such as team sports, dance, aerobics and sports training. She testified that she had spent approximately 30 years in this type of employment.

Ms. Bailey testified that due to her injuries and her health problems that she has no income and no one to "fall back on" but has pushed herself hard to return to work. Ms. Bailey testified that she suffers from depression about not being physically fit, as once she was.

Ms. Bailey testified that though once she assisted others to physically rehabilitate themselves following an injury, she cannot rehabilitate herself. She expressed anguish that she is injured and can no longer participate in sports, or in body building. She testified that she can no longer engage in the physical activity which once defined her life. She testified that she weighs 200 pounds and that before the injury, she had never weighed more than 135 pounds. She disagrees with the physical impairment rating of 2% issued by the authorized treating physician.

Ms. Bailey testified that she is hurting. She testified that she worked every day and never had a reason not to report to work or to miss work. She testified that she was

---

[5] Plaintiff Exhibit #3
[6] Plaintiff Exhibit #5

dedicated to her work for the Defendant City of Birmingham, but that, in her view, the City of Birmingham has not treated her as she would have preferred following her injury.

Ms. Bailey testified that despite the evidence of surveillance conducted on her by Defendant, she cannot work in her yard, as once she did. She testified that she took pride in how well she kept her yard, but that now her yard is overgrown because of her inability to tend it as she did before her injury.

Ms. Bailey was asked about the requirements of her employment with Defendant,[7] and whether she could still perform those physical tasks which requires "frequent physical effort, such as sitting, standing, walking, running and the light lifting of objects under 15 pounds for a short duration and occasionally lifting objects of 15-49 pounds for a short duration." Ms. Bailey did not make a clear response to the question regarding her ability to meet those physical requirements.

Ms. Bailey was questioned about treatment of her cervical spine in November of 2008, prior to her injuries sustained while acting in the course of employment with Defendant. Her Metro West Medical Group medical records from that treatment by Dr. John Morgan were introduced into evidence.[8] The initial note is dated December 12, 2008 and records the following as the chief complaint at that time:

> "HISTORY OF PRESENT ILLNESS: This is a 43 year old African American woman referred by Dr. Theodis Buggs, an orthopedic surgeon. She reports that she has had discomfort for over 20 years and perhaps first started when she went to high school. There has been diffuse aching, throbbing and swelling pains and sensations."

In a follow up note dated August 4, 2009, Dr. Morgan diagnosed Ms. Bailey with Myofascial Pain and Anxiety. He noted that she also had hypertension, anxiety and depression. The treatment note, though very illegible, states in part as follows:

> "She's back in follow up as we try to come to conclusion whether her musculoskeletal discomfort has a specific neurological cause. She reports having more pain at the low back and neck in the interval since her visit . . .She has low back pain as well as pain in her neck and other areas..."

A note from January 9, 2009, in the said records of Dr. Morgan, indicated that at that time, Ms. Bailey's weight was 184 pounds. It was noted that she had arthritis in her

---

[7] Defendant Exhibit #12 (same as Plaintiff Exhibit #1)
[8] Defendant Exhibit #13

hands and a thickening of bone in her knees. She was prescribed 150 mm of Lyrica to treat her osteoarthritis.

A note from September 4, 2009 indicated that there was a recommendation that Ms. Bailey return to a psychiatrist and resume taking a 2-mg dose of Xanax, 100 tablets.

On February 24, 2010, she was seen at the UAB Highlands Hospital with left hip pain. She reported her February 16, 2010 work incident which occurred when she was demonstrating a dance move and that she was having pain down her left buttock and thigh and to her left foot.

The said record indicates that Plaintiff was treated regularly by Dr. Morgan through the year 2010. On October 12, 2010, her condition was described as post-traumatic lumbar osteoarthritis related to a work incident.

On October 20, 2010, Dr. Morgan issued a return to work slip for Ms. Bailey indicating that as of October 20, 2010, Plaintiff could return to work without restrictions. However, a note from October 25, 2010 relates that Ms. Bailey called and reported lower back pain with muscle spasms and that despite the return to work slip issued by Dr. Morgan, it would not be possible for her to return to work with the flare of symptoms that she was experiencing. She was asked to see a neurosurgeon, Dr. Daniel Harmon. On November 2, 2010, the record reflects that Ms. Bailey reported to the ER and obtained 2 nerve blocs that required her to have a family member take her home. She was referred to Dr. Kelsey for pain management.

There was also a medical note dated January 31, 2011 where Ms. Bailey had sought treatment for pain in her superior left shoulder with frequent spasms. Surgery was not indicated and Plaintiff was directed to take pain medications.

An MRI was performed on Plaintiff's cervical spine on February 7, 2011 prior to her on the job accident which occurred on February 16, 2011. The impression was cervical spondylosis[9]

Ms. Bailey was asked whether Dr. Morgan had prescribed her pain medication and she testified that she did not have a complaint of neck pain when she was treated by Dr. Morgan. In her deposition of November 4, 2017, Ms. Bailey testified that she did not

---

[9] Refers to impaired function of the spinal cord caused by degenerative changes of the discs and facet joints in the cervical spine (neck).

complain of neck pain prior to 2011, and then she was shown Dr. Morgan's medical record which indicated that she had complaints of neck pain at the time she was treated by Dr. Morgan prior to 2011. Ms. Bailey testified that she had a meniscus tear in her knee and that the pain from it had affected her whole body.

Ms. Bailey was questioned regarding the injuries she sustained in the February 16, 2010 incident, held by this court to be non-compensable, and she testified that she had injured her hip and lower back in that accident, not her cervical spine.

Ms. Bailey's entire medical record was introduced into evidence. The Court reviewed all of the exhibits and makes note of the following matters contained therein:

• The Court has reviewed the <u>UAB Medical records</u>.[10] The record starts with an entry on February 24, 2010 in which Plaintiff's complaint was injury to her left hip incurred while dancing during a Mardi Gras party at work. Plaintiff was diagnosed with left hip strain.

On February 16, 2011, there is an entry in the record with Plaintiff having complained of "pain all over". The history indicates that Plaintiff had been followed by Dr. Morgan at BMC – Princeton and that most recently, at 6:00 p.m. she sat down at work in a chair and the chair collapsed causing Plaintiff to fall on her left side. Plaintiff did not report hitting her head, there was no loss of consciousness and she was able to stand back up, ambulate, but reported pain over all of her body. She was diagnosed with "acute or chronic pain". Plaintiff was discharged with a diagnosis of cervical strain. The reporting physician was Dr. Kevin Barlotta.

On January 14, 2012, there is a record of Plaintiff reporting to UAB Highlands ER. At that time, Plaintiff reported that she had been hit on the neck from behind, with someone's fist. She reported neck pain radiating down into her shoulders and that she has a history of cervical problems. At that time, Plaintiff's weight was recorded as 175 pounds, that she had sharp radiating pain in her right and left shoulder at the intensity of 9 on a 10-point scale. A CT Scan was done on January 14, 2012 which had the following findings:

"No cervical spine fracture is identified. There is a widening of the C7-T1 disk space anteriorly. There is no fracture through the adjacent vertebral bodies. . . There are

---

[10] Defendant Exhibit #14

multilevel cervical spine degenerative changes with uncovertebral DJD causing bilateral neural foraminal narrowing at C5-6 as well as mild central canal narrowing at this level. . ."

The recording impression was a possible ligamentous injury at C7-T1 with cervical spine degenerative disease present.

The record contained a return to work slip indicated that it was not determined whether the injury complained of on January 14, 2012 was work related or not, but that Ms. Bailey could return to work on January 25, 2012. There were no restrictions indicated.

Plaintiff was again treated at UAB Highlands on January 22, 2012. Her chief complaint was neck and shoulder spasms. Her pain intensity was recorded as a 10 on a 10-point scale. Ms. Bailey was discharged with a diagnosis of cervical strain, muscle spasms, depression and hypertension.

Plaintiff was seen next on January 25, 2012 reporting neck and shoulder pain, chronic since her injury of 11 months ago. She also reported that she did not fill the pain medication prescriptions that she was given on January 22, 2012. She reported sharp pain of 10 on a 10-point scale. January 25 was a therapy session and the medical record indicates that when Plaintiff appeared to sign in she was "moaning and groaning" and asked to go to the ER rather than attend a PT session. She was transported by wheel chair. She appeared at the UAB Highlands ER complaining of sudden onset muscle spasms with the pain being from moderate to severe. She was diagnosed as having cervical spasms.

On February 1, 2012, Plaintiff again appeared complaining of neck pain with an intensity of 10 on a 10-point scale. Plaintiff complained of chronic neck pain and spasms. She reported that she was going to therapy and taking her pain medications and that her pain on February 1, 2012 was moderate to severe. She stated that she reinjured her neck about 3 weeks ago, which would be mid-January 2012. Plaintiff's diagnosis at that time was cervical spasms and radiculopathy.

• The Court has reviewed the treatment records of <u>Dr. James Berretta</u>.[11] Dr. Berretta treated Plaintiff from December 2, 2014 to October 12, 2016. In his initial visit, Dr. Berretta's impression of Plaintiff's condition was as follows:

---

[11] Defendant Exhibit #15

Roberta Bailey v. City of Birmingham
Civil Action Number CV 2010-904250
Page 8 of 26

"pre-existing cervical degenerative disc disease with osteophytes pre-existing; anxiety with amplification of symptoms secondary gain."

The plan was to drug screen Plaintiff because of her history of anxiety and her amplification disorder. He did not recommend use of pain medication or anti-inflammatory medication. He also did not recommend the use of a cervical brace or sling as such use would only decrease her range of motion.

On March 24, 2015, Plaintiff complained of spasms in her neck and left shoulder. His impression of Plaintiff's condition was not changed.

In a June 19, 2015 note, Dr. Berretta records that Plaintiff sought treatment in the Princeton ER complaining that her whole body had "given out and is weak". In Dr. Berretta's note, he records that he is only authorized under workers compensation to treat her for injuries she received when she had a "tap on the shoulder and folding chair collapse." For any other injury, she would need to consult her private carrier for coverage. He also recorded that Plaintiff accused him and his staff of being racist and she threatened to sue him for slander and defamation of character.

On August 24 ,2015, there was a medical note that reflected the same information as the March 24, 2015 note.

On October 20, 2015, the note reflects that Plaintiff had complaints related to her degenerative disc disease in her neck with associated arm tingling and that she lacked energy. The therapeutic effects of her last epidural nerve block had reportedly worn off. Dr. Barretta reports that Plaintiff stated that Dr. R. Cem Cezayirli, a neurosurgeon at BMC-Princeton, had administered nerve blocs for her and that he recommended that she have three plates inserted into her neck.

Finally, on October 12, 2016, the note reports that Plaintiff's complains at that time were related to her degenerative disc disease in her neck and tingling in her arm and that she was dropping objects. His impression was the same and his plan was as follows:

"The tap injury to the trapezius has resolved without any residual. Patient has not sought care in 1 year therefore I believe she is no longer in need of treatment by myself and workers comp. Patient should follow up with neurosurgeon Dr. James Langan who has been providing her care for the past year."

On November 7, 2016, Dr. Berretta discharged Plaintiff from his care; indicated that Plaintiff had returned to her baseline condition prior to her injury; and, that she had reached MMI from her January 12, 2012 injury.

- The Court has reviewed the treatment records of <u>Dr. Edwin Kelsey</u>, of Birmingham Pain Management.[12] His treatment records commence on February 24, 2011 and end on June 12, 2013.

On February 24, 2011, Plaintiff's chief complaint was lower back pain. His impression was that Plaintiff suffered chronic lower back pain with many causes including a degenerative change in her lower spine. Kelsey also diagnosed Plaintiff with a subacute LS strain.

On April 1, 2011, Plaintiff had the same diagnosis and Dr. Kelsey added that all of her conditions were exacerbated by a work-related incident that occurred in 2010. An MRI had been ordered in March 2011 and showed narrowing at the L2-3 site in Plaintiff's lower back.

On April 5, 2011, Dr. Kelsey administered an epidural block at the L/S site.

On May 25, 2011, Plaintiff complained of back pain and that the therapeutic effects of the epidural block had worn off. She requested additional leave of absence from work and he stated that he gave her additional leave from work to the end of the year. Plaintiff also made a request for more pain medications and a drug screen was performed.

On June 16, 2011, Dr. Kelsey was asked to clinically assess Plaintiff's pain relative to her application for social security disability. He reported that her pain is present to the point of being distracting to adequate performance of daily work activities; that physical activity greatly increases her pain; and that her present pain medications may create some limitations on her ability to work.

On August 24, 2011, Dr. Kelsey reported that Plaintiff had a new set of pain issues in her left shoulder, arm and neck related to an incident at work wherein a folding chair collapsed from under her while she was trying to sit. Physical examination showed that she tightened her neck upon palpation of the cervical spine.

---

[12] Defendant Exhibit #16

On September 14, 2011, Dr. Kelsey reported that Plaintiff had continuing neck pain. She had a recent MRI performed on her cervical spine which showed canal stenosis at C4-5 and degenerative changes at C5-6 and C6-7, with no herniation. He also reported:

> "The patient had strange pain behaviors in my clinic in which she would act out like some type of spasm was contorting her whole body while she was talking to me. . . Patient was observed by the staff in the hallway of the hospital and there was no discernable pain behaviors demonstrated throughout the corridors prior to her entering the exam room of my office."

His diagnosis remained the same as moderately advance degenerative changes of the cervical spine.

On October 12, 2011, Plaintiff again appeared at the pain clinic complaining of the same symptoms in her neck and requesting a refill of her pain medications. He also noted: "She still has some weird, painful behaviors that she displays whenever she is in my presence. She does not do that with the rest of my staff."

On October 13, 2011, Dr. Kelsey signed a return to work slip indicating that Plaintiff could return to work without limitations on January 3, 2012.

On January 25, 2012, Plaintiff reported that she had returned to work, but that she was assaulted by a man who struck her in the back of the head which caused her neck pain to return radiating into her shoulders and requiring Defendant City of Birmingham to take her off of work again. Dr. Kelsey reported that he was not treating Plaintiff for this work-related injury.

On July 17, 2012, Dr. Kelsey reports a history of Plaintiff having complained of neck, shoulder and lower back pain that radiates down her left leg that started from the January 2010 injury that occurred during working hours. She reported that the pain got worse after she fell when a chair collapsed under her in an incident that occurred on February 17, 2011. She was off work under workers compensation until she returned on January 2, 2012. She then reportedly suffered another job-related injury in an altercation which caused her to leave work as of January 20, 2012 and she has not returned to her work since that time.

The diagnosis at the time was chronic neck pain secondary to advanced degenerative disc disease of the cervical spine; to rule out cervical HNP secondary to a

work-related injury; and lower back pain secondary to moderately advanced degenerative disc disease of the LS spine exacerbated by a work-related strain.

On March 31, 2013, Dr. Kelsey reports that Plaintiff appeared and complained of neck and left shoulder pain as well as pain in her arm and that her left hand and fingers go numb. She reported difficulty in opening and closing her hand.

On April 16, 2013, Dr. Kelsey reports that Plaintiff again appeared at the pain clinic with the same complaints. She reported that she had been seen by Dr. Jack Denver at Lakeshore Rehabilitation Center and that a nerve conduction test was performed which showed all motor and sensory nerves to be within normal limits. The needle EMG performed on selected muscles showed normal, with no abnormal spontaneous activity.

On June 12, 2013, Dr. Kelsey prepared an addendum to his April 16, 2013 note which included the following:

> "As of [April 16, 2013] patient has a 2% PPI that is whole body and includes all of her work-related injuries from both January 12th, 2012 and February 16th, 2011. There is no need for further follow up with me. Patient is now with an addiction specialist who is slowly de-toxing her from her chronic opiate medications and assisting her with management of her ongoing psych problems."

There was also an audio tape of Dr. Kelsey introduced and to which the Court has listened. In the audio recording of Dr. Kelsey agreeing that at the time of his return to work slip was issued, he may not have been Ms. Bailey's treating physician. However, he said that he had no recollection, and that he would not commit to anything until he could review the treatment file. He recommended that if that were the case, that Ms. Bailey should arrange for him to be deposed. At that time, he could review the entire file and give his testimony, after having performed a full review of his treatment file, regarding whether he was a treating physician at the time that he issued the return to work slip, found Plaintiff to have reached MMI and rated her at 2% physically disabled. The tape, however, is not dated, nor is the date of the meeting referenced in the recording.

- The Court has reviewed the medical records of <u>Southside Pain Specialists</u>.[13] Ms.

---

[13] Defendant Exhibit 17

Bailey was treated at this facility in May and June of 2013 by Dr. Michael Kendrick. Her initial visit was dated May 15, 2013 and she was screened to determine which pain medications she was taking at that time.

Plaintiff reported at that time that she was experiencing neck pain that radiated down her left shoulder and arm. She described the pain as aching, throbbing, sharp, deep and constant, rating its average intensity as a 9 on a 10-point scale. She is reported to have stated that its onset was on January 12, 2012. That that time, records show that while sitting in a game room at work, a man tapped her on the left shoulder to say "Hello" and she became startled. Plaintiff reported that rather than being tapped on the shoulder, the man struck her in the neck with his fist.

She reported associated symptoms of left arm and hand weakness; numbness and tingling in the left hand and fingers. She reported popping and clicking in her neck and she was using a cane to assist her in walking.

A February 7, 2011 MRI showed spondylosis worse at C5-6 and C6-7. There was this clinical note as well:

"There were several inconsistencies with the patient's behavior today. My staff witnessed the patient walking in the hallway, initially holding onto the wall for support, but when she was asked a question and turned around, she then began to walk normally. When speaking with a clinical assistant prior to my exam, the patient's neck was flexed laterally and she complained of spasms that limited her ROM. She then flexed her neck toward the opposite shoulder, and at times held her neck erect without apparent distress. . ."

On May 29, 2013 Ms. Bailey reported that she had taken marijuana on May 18, 2013. As of that time, she weighed 192 pounds. Her medical diagnosis was described at that time as cervical spondylosis without myelopathy[14]. In his assessment, Dr. Kendrick reported that Ms. Bailey had been noncompliant with the prescribed treatment plan. She was regularly using marijuana and non-prescribed opiates. He reported that she was exaggerating her symptoms. Due to this, Dr. Kendrick wrote,

"Due to this, pain management is not warranted and I recommend discharging her from pain management as this is not a pain related problem. She had findings of facet arthropathy prior to her work injury. . . Upon leaving the office building, she was

[14] Cervical spondylosis with cervical myelopathy, commonly referred to as cervical spondylotic myelopathy (CSM), refers to impaired function of the spinal cord caused by degenerative changes of the discs and facet joints in the cervical spine (neck).

observed again on the camera talking on her phone and moving her head/neck without difficulty."

On May 31, 2013, the record indicates that Ms. Bailey called for Dr. Kendrick requesting physical therapy and chiropractic case as her back was out of alignment. She reported that she felt her needs had been neglected and that she was "willing to work together". A comment at the end of the note read, "No, she is magnifying her symptoms and using illegal drugs. She is not a candidate for pain management.

The record contained the First Report of Injury for Plaintiff's January 12, 2012 alleged injury, which was reported as follows in the report:

"At 3:30 pm, while sitting in a chair (game room), a black gentleman approached her and tapped Roberta on the shoulder to say, "Hello". Although the tap on the shoulder was slight, it seemed to startle her. Ms. Bailey never reported to me any injury at the time and continued to work her scheduled shift."

The report was prepared by Mr. Cleophus Clency on January 18, 2012 at 10:15 a.m.

On June 7, 2013, Dr. Kendrick released Plaintiff from his treatment for having violated the prescription drug policy of the Southside Pain clinic.

• The Court has reviewed the medical records of <u>Dr. James G. Langen from Metro West Medical Group, P.C.</u>[15] Plaintiff had been referred to Dr. Langen by Dr. James Lott of Pulmonary and Critical Care Specialists on July 10, 2012. She had been treated by Dr. Lott for asthma and reported a history, on June 13, 2012, which included hypertension, chronic lower back pain, anxiety and depression.

In a September 19, 2013 note, Dr. Langen wrote that Plaintiff suffered from chronic pain syndrome, chronic neck pain and chronic use of narcotics. He noted that Plaintiff had been treated by Dr. Kelsey for pain management, but that pain management had not been "switched to" him yet.

On a January 19, 2017 note, Dr. Langen reported in his history of present illness that Plaintiff suffered from chronic anxiety and depression for which she is being treated by a Dr. Jetty. She complained of cervical and lumbar disk disease. He believes that she needs surgery, but because of the pendency of her workers compensation claim, whether

---

[15] Defendant Exhibit #18

her insurance will pay for the procedure cannot be determined.   He wanted to administer a pain bloc at that time.

The record contains an MRI study performed on Ms. Bailey on February 17, 2017 of her cervical spine. The study showed no disc herniations, but diffuse disc disease from C-4 through C-6 with disc/osteophyte complexes and mild to moderate central canal stenosis, most prominent at C5-6. The overall impression was that there had not been much change in Ms. Bailey's cervical spine since the date of her last MRI study.

Her last MRI study was performed on February 27, 2015. At that time, she was diagnosed with cervical disc disease. The impression was of multilevel spondylosis with a small intrusion into the spinal canal at C5-6. An x-ray of her shoulder at the time showed AC joint degeneration, but no fracture or acute shoulder abnormalities.

• The Court has reviewed the medical records of Dr. Marion Sovic.[16] Dr. Sovic is a pain management physician and is associated with Pain Management Services Brookwood. His first note was dated October 8, 2013 and indicates that her treatment was related to cervical and lower back pain.

In a December 17, 2013 note, Dr. Sovic noted that he treated Plaintiff in July 2013 and administered a nerve bloc to her in August 2013.  Due to the issues that she had with Dr. Kendricks, Dr. Sovic reported that he could not continue narcotics which Dr. Kendrick had not allowed.

On March 18, 2014, Dr. Sovic noted that Plaintiff complained of left shoulder pain. She complained that the medication was not helping. He suggested that she see an orthopedic surgeon, and Plaintiff consulted with Dr. Powell who did not recommend surgery and her problem is mainly arthritic in nature.

The last note from Dr. Sovic's records is for September 23, 2014.

• The Court has reviewed the treatment records of Dr. Thomas Powell.[17] This record covers one visit on March 13, 2014 wherein Plaintiff was evaluated for her left shoulder. The history of the injury, though dated for 2012, describes the collapsing chair incident which occurred on February 6, 2011.  Ms. Bailey reported that she suffered trauma to her left side of her neck which struck a bench. Under his assessment, Dr. Powell wrote:

---

[16] Defendant Exhibit #19
[17] Defendant Exhibit #20

Roberta Bailey v. City of Birmingham
Civil Action Number CV 2010-904250
Page 15 of 26

> ". . . I think there are strong histrionic overtones with extreme symptom magnification. I am not so sure that there is not a personality disorder, completely unrelated to her reported on-the-job injury. I think a short course of physical therapy would be reasonable, but this should be pursued under her private insurance."

Dr. Powell's notes reflect that Ms. Bailey's condition in her left shoulder is caused by arthritis.

• The Court has reviewed the treatment records of <u>Dr. Martin Jones</u> of Neurological Surgery Associates, P.C.[18] The record indicates that Plaintiff first was seen by Dr. Jones on January 18, 2012, approximately one week after the incident alleged in Count II of her Third Amended Complaint. Ms. Bailey reported that she had symptoms of aching, numbness, tingling, burning, stabbing and spasms in her neck and bilaterally down her upper extremities. She lists the date of injury as January 12, 2012. In answer to the question of "when did your pain begin?" Ms. Bailey wrote, "2-16-2011", and when asked how the injury happened, Ms. Bailey wrote, "A chair collapsed at work, my head, neck, back and bottom hit the floor."

Dr. Jones' record reflects that he reviewed an MRI scan performed on January 17 that showed multilevel moderate disc degenerative changes; evidence of central and foraminal stenosis at C3-5, C5-6 and C6-8. He reported that there was no abnormal cord signal to suggest myelopathy and no evidence of a fracture. There was no medical recommendation of surgery in her records. In his impression and treatment plan, Dr. Jones detected some psychological issues that needed to be addressed. He wrote, "As far as I can tell, her spine is okay other than arthritic condition and I just do not see that there is anything surgical to do."

He recommended physical therapy.

• The Court has reviewed the treatment records of <u>Dr. Daniel Harmon of Haynes Neurosurgery</u>.[19] The first note in this record is from August 26, 2010 when Plaintiff appeared with a history of having suffered an injury in January of 2010 resulting from a fall at work while dancing. At that time, she had a history of arthritis, depression,

---

[18] Defendant Exhibit #21
[19] Defendant Exhibit #22 (The subpoena was sent to obtain Dr. Cem Cezayirli's treatment records, but a note from Medical Records stating that only Dr. Harmon had actually treated Plaintiff.

anxiety and osteoarthritis. She was diagnosed with lower back pain with physical therapy recommended as treatment.

Plaintiff was seen again on November 18, 2010. It was noted then that she had full range of motion of her neck. However, the following was noted:

> "She has severe pain with range of motion, although this seems to differ with time and to be inconsistent. At times, she is able to flex and extend and at times she cannot. At times she can rotate easily but at times muscle spasm will come on and she has a very dramatic reaction to this including screaming in pain."

It was recommended that she continue treatment at a pain clinic and receive epidural blocks.

She was seen next on February 3, 2011. At that time, an MRI was ordered. Her treatment diagnosis was lumbosacral spondylosis.

This record included radiological studies performed at BMC-Princeton on February 7, 2011[20], namely an MRI of the cervical spine which indicated spondylosis, worse at C5-6 and C6-7. Also, at that time, Plaintiff complained of neck pain and bilateral arm pain. A nerve conduction test was performed, and results were normal. The impression was that there was no electrophysiological evidence of peripheral neuropathy in all nerves tested in the upper extremity.

Plaintiff was next seen on March 3, 2011. Her complaints were of neck spasms and arm pain. Results of the MRI exam was a diagnosis of lumbosacral spondylosis and Cervical spondylosis.

She was seen again in September 2011 for review, but no changes in complaints or diagnosis.

On April 16, 2015, she again was seen. She reported chronic back pain with an onset identified by her as the 2011 fall at work that resulted in her neck and left arm pain. She reported that her pain has been steady and constant and feels as though her depression is due to her chronic pain.

She reported that her pain radiates into her left arm and that she experiences muscle spasms. She reported stabbing pain in her back neck and shoulder. The recommendation at that time was for surgery. Dr. Harmon reported that at C4-5, C5-6

---

[20] Prior to the February 16, 2011 collapsing chair incident

Roberta Bailey v. City of Birmingham
Civil Action Number CV 2010-904250
Page 17 of 26

and C6-7, there is a severe compromise of the neuroforamen with corresponding pain and symptoms.

On February 16, 2017, Plaintiff was seen again by Dr. Harmon. He reported that she was "wailing" and is in acute distress sitting on his examination table. She reported severe tenderness to her posterior shoulder on palpation, but no muscle spasm could be palpated on exam.

On March 20, 2017, Plaintiff was seen again, according to the records. Similar complaints and the same diagnosis was recorded. Surgery was recommended, but Plaintiff declined. PT was recommended, and that Plaintiff return for treatment as needed.

• The Court then reviewed the medical records of BMC-Princeton Hospital.[21] These records show that Plaintiff received a cervical spine nerve block at C6-7 on June 1, 2017.

There is a record of an August 24, 2017 admission as well. Plaintiff's medical condition was reported as chronic neck pain and cervical radiculitis. She was administered an epidural steroid injection in her cervical spine at the C6-7 site. Plaintiff attended PT sessions during the first half of 2017.

• The Court then reviewed the treatment records of Dr. Praveen Jetty of Jetty Psychiatry.[22] The record indicates that Plaintiff commenced treatment with Dr. Jetty on May 12, 2010 after the first incident made the basis of Plaintiff's original claim in this case. In her history from that incident, Plaintiff referenced the said incident where she injured her hip while dancing at work and a co-worker fell on her. Plaintiff related that she suffered from anxiety dating back to 2003.

Plaintiff treated again on August 9, 2010 and described that she was suffering depression because of her injuries incurred in her fall at work. She was treated again on September 29, 2010 and again was provided with prescription medication. She was treated again on January 24, 2011, again receiving prescriptions for medication.

On March 27, 2011, she was seen again and reported feeling better. She stated that she returned to work with the City of Birmingham on January 4 and worked until

---

[21] Defendant Exhibit #23
[22] Defendant Exhibit #24

February 16, 2011 when she was injured again at work, this time when a chair on which she was sitting gave way and she fell to the floor.

There were several other visits through 2011 and into 2016 and to June 29, 2017. She was treated for anxiety and depression and prescribed medications for these conditions. In 2016, she reported having anxiety attacks.

• Finally, the Court has reviewed the medical records of Ortho Sports Associates,[23] where Plaintiff was treated from March 2014 to June 2015. The May 22, 2015 treatment is documented in the record most extensively. Plaintiff complained at that time of left shoulder pain and her treating physician was Dr. John Featheringill. He ordered an MRI of the left shoulder. In a March 14, 2014 note, Dr. Featheringill wrote the following with regard to the history of this case. Plaintiff was a new patient at this time:

> "The patient is a 49 year old African-American female with a long and bizarre history of multiple orthopedic complaints, spine complaints, starting with an on the job injury about 4 years ago. Neck, back, left shoulder chest was working for the City of Birmingham in the Parks and Recreation board return to work for a while in 2011 "chair collapsed" hurting her again in the same areas. She worked for 10 days in 2012 and said she was hit in the back of her head by a coworker off work since then she was under pain management here with Dr. Kelsey and now she is seeing Dr. Sovic at Brookwood. . .The patient I think is referred today from Dr. Langan's office to be evaluated. On top of all this, she was struck in the car. On March 10, 2014 [taken] to the ER at Princeton and had some films made. . . She said this accident "rejarred" all of her pains."

Her diagnosis at that time was for a sprain/strained shoulder, and neck pain. His plan, at that time was to see her as needed, as he wrote, "she is to follow the pain management doctor and whoever her workers comp physician is for these and other musculoskeletal injuries, see back as needed."

On March 3, 2014, there is an entry following Ms. Bailey's motor vehicle accident of that date.

Ms. Bailey continued to testify that in 2010, she applied for Social Security Disability. She had chronic sinusitis, and meniscus tears in both knees, as well as suffering from clinical depression and severe anxiety, as well as hypertension. She

---

[23] Defendant Exhibit #25

testified that Dr. Kelsey was a good doctor until he diagnosed her with fibromyalgia, which Ms. Bailey testified, was incorrect.

In an undated document, Dr. Kelsey prepared and signed a return to work slip for Plaintiff. It states that the last time Plaintiff treated with Dr. Kelsey was on **October 13, 2011**. The slip stated that Plaintiff could return to work on January 3, 2012 without limitations.[24]

Ms. Bailey testified that she returned to work on January 3, 2012 and worked 10-12 days until the January 12, 2012 incident made a basis of her claim. Her average weekly wage was then $450/week.

Regarding the 2012 incident, Mr. Bailey testified that a man was in a narcotics seminar and came up behind her and struck her in the back of the neck with his fist. After that, Plaintiff testified that she could not return to work. On March 3, 2014, there was a note that Plaintiff could return to work. She testified that she was "bed bound" for more than a year following the February 16, 2011 incident.

Defendant introduced into evidence surveillance reports regarding Ms. Bailey's activities on December 21, 2012[25] and December 7, 2012[26] as well as a copy of the surveillance tape[27]. The Court has viewed the tape. Exhibit #28 depicts Plaintiff at the grocery store pushing her grocery buggy outside of the store. She is shown opening the trunk to her Maxima sedan, vanity tag "ROSE 4", and lifting bags of groceries from her grocery buggy and into her truck, some of them using just one hand, while her other hand held her purse. In the tape, she is not in any apparent distress. The tape runs for 5 minutes, 3 seconds. There was a second clip on the same date, December 21, 2012 depicting Plaintiff carrying a box from a store to her car.

Ms. Bailey testified that she did not exaggerate her symptoms and would never do so. Ms. Bailey was read the various passages from her medical record cited hereinabove in this order and asked for her comment, and Ms. Bailey testified that she did not know anything of the comments made in her medical records. She testified that she has

---

[24] Defendant Exhibit #31
[25] Defendant Exhibit #28
[26] Defendant Exhibit #29
[27] Defendant Exhibit #30

episodic pain whereby at times she can function normally, but then an episode strikes and she experiences spasms and pain that are debilitating, until the episode passes.

Ms. Bailey testified that in March of 2014, she was involved in a motor vehicle accident while attempting to return to work. She testified that the motor vehicle accident aggravated her neck pain. She testified that she could not report to work on that day because of the motor vehicle accident and her having to be treated at an ER.

Regarding her February 16, 2011 injury resulting from Ms. Bailey falling from a chair that collapsed from under her, Ms. Bailey was seen on the same day by Dr. Michelle Turnley of UAB. She reported that Ms. Bailey was experiencing neck pain, but that the pain was not work related and she discharged Ms. Bailey from her care. She wrote that Ms. Bailey's pain was not related to any physiological process.[28]

On July 10, 2018, Plaintiff communicated with counsel for Defendant stating that she wished to return to work with Defendant City of Birmingham performing extra light duty work, provided she can obtain a medical release from her physician.[29]

Ms. Bailey testified that she was paid some temporary total benefits at a rate $450/week. Regarding her claim for mental anguish, Ms. Bailey testified that she would attribute half of that to her chronic pain suffered as a result of the two incidents made the basis of her workers compensation claim and the other half to the loss of her job caused by her claim that she suffered a retaliatory discharge from her work.

On November 7, 2016, Dr. Berretta had discharged Plaintiff from his care; that Plaintiff had returned to her baseline condition prior to her injury, that she had reached MMI from her January 12, 2012 injury.[30]

**Rozalind Simon.** Plaintiff next called Ms. Rozalind Simon to testify. Ms. Simon is an Assistant City Attorney for the City of Birmingham. She identified the First Report of Injury form which was completed and filed with regard to the February 16, 2011 accident involving the collapsed folding chair. The report was prepared and filed on February 17, 2011.[31] She also identified the First Report of Injury[32] filed with regard to the January 12, 2012 incident in which it is described therein that a man approached

---

[28] Defendant Exhibit #34
[29] Defendant Exhibit #33


[30] Defendant Exhibit #2

Plaintiff and tapped her on the shoulder to say "Hello" and that it seemed to have startled her. The report was prepared on January 18, 2012.

Plaintiff also sought to introduce into evidence a Police Incident Report of the January 12, 2012 incident.[33] The Court sustained Defendant's hearsay objection but allowed the report into evidence for the limited purpose of considering the date of the report as proof that the assault alleged therein, in fact occurred. However, the report was not made until December 30, 2013, well past the alleged date of the alleged incident.

**Sherrod Coats.** The Court then received the sworn testimony of Mr. Sherrod Coats. Mr. Coats testified with regard to the January 12, 2012 incident stating that the gentleman had tapped Ms. Bailey on the shoulder and that he did not see the man ball his fist and strike Plaintiff in the back of the neck.

**Michelle Taylor.** The Court then received the sworn testimony of Ms. Michelle Taylor, the Office of Health Services Administrator for Defendant City of Birmingham. Ms. Taylor testified to the amount paid to Plaintiff as temporary total disability payments from August 16, 2011 to April 16, 2013.[34] Ms. Taylor also testified with regard to the gross pay earned by Ms. Bailey for the 52 weeks prior to her February 16, 2011 injury[35] and prior to her January 12, 2012 incident.[36]

**Roberta Bailey.** Finally, Ms. Bailey returned to the witness stand and asked to explain her definition of being "bedbound" which explanation more closely resembled a person who is "home bound" rather than one who is bedridden or otherwise invalid.

### Findings of Facts

There are three separate and distinct incidents relevant to Plaintiff's workers compensation claim for benefit.

1. The first occurred on February 16, 2010 in which Plaintiff suffered an injury to her lumbar spine and her left hip and for which she obtained treatment. The medical records indicate, and the Court so finds that Plaintiff recovered from that

---

[33] Plaintiff Exhibit #8
[34] Defendant Exhibit #3
[35] Defendant Exhibit #10
[36] Defendant Exhibit #11

incident and was issued a return to work slip from Dr. John Morgan on October 20,
2010. On August 5, 2011, this Court held, following a *Publix* hearing, that those
injuries were not compensable as they did not arise from the course of Plaintiff's
employment, as required by Ala. Code §25-5-1(9) (1975)[37]

2. The second injury occurred on February 16, 2011 when Plaintiff fell to the floor
when the chair on which she was attempted to sit collapsed under her. By order of this
Court entered on February 8, 2012, following a *Publix* hearing, this injury was held to
be compensable under the same statutory provision. The medical records created on the
date of the injury document a cervical strain injury resulting from the said accident, for
which Plaintiff sought treatment. On October 13, 2011, Dr. Edwin Kelsey issued a return
to work slip indicating that Plaintiff could return to work without limitations on January
3, 2012. In fact, Plaintiff did return to work on January 3 or 4, 2012.

There was the June 12, 2013 addendum to an April 16, 2013 note from Dr. Kelsey
indicating that as of April 16, 2013, Plaintiff had achieved MMI from both this injury
and the subsequent injury and he set her physical impairment at 2% to the body as a
whole. Though Plaintiff asserted throughout the trial that this report from Dr. Kelsey
was "bogus" due to the fact that Dr. Kelsey had not treated Plaintiff since 2011, the
medical record indicates otherwise.

The record indicates that Plaintiff was seen by Dr. Kelsey on January 25, 2012
when Plaintiff saw Dr. Kelsey for the injury incurred in the 2012 incident. Dr. Kelsey
reported that he was not treating Plaintiff for the 2012 injury. She also visited with Dr.
Kelsey on July 17, 2012 at which time he gave his diagnosis of her condition as chronic
neck pain secondary to advanced degenerative disc disease of the cervical spine and
lower back pain secondary to moderately advanced degenerative disc disease of the LS
spine exacerbated by a work-related strain.

On March 31, 2013, Dr. Kelsey reports that Plaintiff appeared and complained of
neck and left shoulder pain as well as pain in her arm and that her left hand and fingers
go numb. She reported difficulty in opening and closing her hand.

---

[37] (9) Injury. "Injury and personal injury" shall mean only injury by accident arising out of and in the
course of the employment . . .

She was also seen by Dr. Kelsey on April 16, 2013 and on June 12, 2013, the MMI report was made retroactive to the April 16, 2013 office visit as an addendum. The Court therefore, does not find that Dr. Kelsey issued his MMI report and physical impairment rating at a time after he no longer was her treating physician, though he admittedly was not her treating physician for the subsequent incident that occurred in 2012.

The Court therefore finds the February 16, 2011 claim to have been compensable and that maximum medical improvement was reached on April 16, 2013.

3. The third injury occurred on January 12, 2012. From the testimony of Mr. Sherrod Coats as well as the documentation of the First Report of Injury, this incident involved a gentleman who approached Plaintiff and tapped her on the shoulder to say "Hello". Plaintiff was startled and the incident was not then reported to Mr. Clency, her immediate supervisor.    There was an incident report prepared whereby Plaintiff reported to the Birmingham Police Department, however, the date of the report is December 30, 2013, for an incident that allegedly occurred on January 12, 2012, almost 2 years prior to the report. There is no evidence of the identity of the person, or of any arrest or prosecution. The Court therefore does not find substantial evidence to support Plaintiff's claim that she was struck in the neck by a fist in a criminal assault while she was at work.

Further, when Plaintiff sought treatment with Dr. Martin Jones of Neurological Surgery Associates on January 18, 2012 she mentioned the January 12, 2012 incident. However, in response to the question of when her pain commenced, Plaintiff wrote "2-16-11" which was the date of the collapsing chair incident.

The Court therefore finds that the January 12, 2012 incident is not a compensable incident and, if anything, a reinjury of the cervical strain suffered in the February 16, 2011 incident.

4. The Court finds that Plaintiff suffered a pre-existing arthritic condition in her spine which has worsened over time and is a cause of her chronic pain. The Court also finds that the compensable injury suffered by Plaintiff on February 16, 2011 aggravated that pre-existing condition.

5.  The Court finds that Plaintiff suffered a cervical strain on February 16, 2011 which resolved on April 16, 2013 when Plaintiff reached maximum medical improvement.

6.  The Court finds that Plaintiff continues to suffer subjective pain which was caused or contributed to by the February 16, 2011 injury and that she is suffering from depression and anxiety caused or contributed to by her said on the job accident.  However, the Court notes that the subjective pain of which Plaintiff complains pre-existed the date of the February 16, 2011 accident.  The Court also notes that almost every health care provider noted that Plaintiff exaggerated her pain symptoms; that he complaints of pain were not consistent with the objective findings of her injury, that is, a cervical strain; and that at times, almost at will, Plaintiff could show symptoms of pain or not.  Only the testimony of Ms. Waddell lends credence to that component of Plaintiff's disability attributable to subjective pain.

7.  The Court finds that since the injury sustained was to Plaintiff's neck; that since the pain involves her entire body; and that she continues to suffer from episodic muscle spasms which have been documented, that she is permanently partially disabled with an unscheduled injury.

8.  The Court acknowledges Defendant's payment of temporary total disability payments of $27,439.27 over a period of 87 weeks and 6 days, from August 16, 2011 to April 16, 2013, or $309.80/week as the compensation rate in this case.

9.  The Court finds that temporary total disability benefits should have commenced on February 16, 2011 and that a period of 26 weeks and 2 days of accrued temporary total disability payments are due @ $309.80/week.

10. The Court finds that the recovery period for Plaintiff for her unscheduled injury is 300 weeks, with credit given for the period of temporary total disability, of 114 weeks, 1 day, or, for a period of 185 weeks, 6 days.

11. The Court finds that Plaintiff's vocational disability rating is 25% and that her average weekly wage was $464.70.

12. The Court finds that Permanent Partial Disability payments were due to commenced in this case on April 17, 2013 and to run for a period of 185 weeks

and 5 days.  The Court finds that that time expired on May 7, 2017 so that all permanent partial disability payments are in arrears and due to be paid in full[38].

## FINAL DECREE

1. By virtue of the Court's August 5, 2011 order, the February 16, 2010 incident is hereby confirmed as not compensable under the Alabama Worker's Compensation Act. *Ala. Code §25-5-1(9)(1975)* as the accident did not arise out of and in the course of Plaintiff's employment.

2. By virtue of the Court's February 8, 2012 order, the February 16, 2011 accident is compensable. Plaintiff is hereby awarded the following benefits under the Act:

    a. Under the provisions of *Ala. Code §25-5-57(a)(1)(1975)*, Plaintiff is entitled to payment of temporary total disability benefits in the amount of 66.67% of her average weekly wage, $464.70, for a period of temporary total disability commencing on February 16, 2011 and ending on April 16, 2013, or 114 weeks and 1 day.  Defendant is given credit for the payments made to Plaintiff to the date of trial covering a period of 87 weeks, 6 days. The period during which benefits under this section are thus due is for 25 weeks and 2 days at a rate of $309.80 for a total of **$8,143.31**.

    b. Under the provisions of *Ala. Code §25-5-57(a)(3)(g) (1975)* Plaintiff is due to receive permanent partial disability benefits for a period of 300 weeks, less credit for the 114 weeks and 2 days of temporary total disability, or for 185 weeks and 6 days; the court determines Plaintiff's vocational disability to be 25%.  Since the period of recovery expired on November 7, 2016, the amount due for permanent partial disability is 100% in arrears and is hereby awarded to Plaintiff in the amount of **$21,592.17**

    c. Under the provisions of *Ala. Code §25-5-77(a)*, Defendant is hereby ordered to pay all reasonable and necessary medical expenses related to the treatment of Plaintiff's chronic pain emanating from her neck, as well as all reasonable and necessary expenses to treat her depression. See, ***Ex parte, Vongsouvanh, 795 So.2d 625 (Ala. 2000)***

---

[38] 25% of $464.70 for 185.7143 weeks

Roberta Bailey v. City of Birmingham
Civil Action Number CV 2010-904250
Page 26 of 26

    d. The Court does not order any sum to be paid under the provisions of Ala. Code
       §25-5-77(b)(1975) for the rehabilitation of Plaintiff to return to work.

3. The Court finds that the January 12, 2012 injury made the basis of Count II of her
   Third Amended Complaint was not proven and no benefits are hereby awarded
   based on this claim.

4. There remains in this action Plaintiff's claim for retaliatory discharge which shall
   be the subject of a scheduling order to be conducted by the Court on Tuesday,
   September 4, 2018 at 1:30 p.m.

**DONE and ORDERED** on this the _13_ day of August 2018.

JOSEPH L. BOOHAKER
PRESIDING JUDGE



ELECTRONICALLY FILED
2/8/2012 4:17 PM
CV-2010-904250.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **ROBERTA BAILEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **CIVIL ACTION NO.:** |
| **v.** | ) **CV 2010-904250 HLB** |
| | ) |
| **CITY OF BIRMINGHAM, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER GRANTING COMPENSATION UNDER THE WORKER'S COMPENSATION ACT

This matter was before the Court on February 7, 2012, for a compensability hearing. This was an evidentiary hearing at which the Court received the sworn testimony of witnesses, had the opportunity to observe and note the demeanor of witnesses and received certain documents into evidence. At issue is whether the plaintiff's claimed on the job injuries of February 16, 2011, were the result of an accident arising out of and in the course of her employment with the defendant, the CITY OF BIRMINGHAM. The Court hereby makes the following findings:

### FINDINGS OF FACT

1.  This is an action arising under the Alabama Workers' Compensation Act, *Ala. Code* § 25-5-1 et seq (1975).

2.  On February 7, 2012, the Court conducted a hearing on issues which address coverage of the claim under the Workers' Compensation Act. The parties stipulated to the following facts:

    a.  Plaintiff/Employee and Defendant/Employer are subject to the Workers' Compensation Laws of Alabama.

will be added by amendment when ascertained.[1]

### COUNT TWO
### (WORKERS' COMPENSATION CLAIM FOR ON THE JOB ACCIDENT OF FEBRUARY 16, 2011)

4.   Plaintiff adopts and re-alleges all paragraphs contained in this Complaint as if set forth fully herein.

5.   The Plaintiff alleges that on or about February 16, 2011, while acting in the line and scope of her employment with the Defendant, the Plaintiff was caused to suffer injuries when a chair she was sitting in collapsed or otherwise failed.  As a result, Plaintiff sustained injury to her head, neck, shoulder, back and lower extremities. Said injury/injuries causes pain and affects and interferes with the efficiency of the body as a whole.

7.   At the time of said accident, the Plaintiff worked as a recreation leader. The Plaintiff avers that she suffered this injury within the line and scope of her employment with the Defendant.

---

[1] Hereafter, any referral to Defendants will be to all Defendants, named and fictitious.

8.  The Plaintiff further alleges that as a result of said accident, she has incurred medical, doctor and prescription expenses.

9.  The Plaintiff further alleges that she has lost wages from her employment and the earning capacity of the Plaintiff has been permanently impaired and thus, the Plaintiff claims vocational disability benefits due her under the Workers' Compensation Act of Alabama.

10. The Plaintiff further alleges that her injuries as above-stated were and are the direct and proximate result of the afore-described accidents.

11. The Plaintiff further alleges that at the time of the accident on February 16, 2011, made the basis of this suit, her average weekly earnings were approximately ($450.00), not including overtime or employer-provided fringe benefits.

12. The Plaintiff further alleges that the Defendants and the Plaintiff were at all times material to this case covered by the provisions of the Workers' Compensation Laws of the State of Alabama.

Page 3 of 8

13. The Plaintiff further alleges that the Defendants had actual notice or knowledge of said accidents and injuries.

### COUNT TWO
### (WORKERS' COMPENSATION CLAIM FOR ON THE JOB ACCIDENT OF JANUARY 12, 2012)

14. Plaintiff adopts and re-alleges all paragraphs contained in this Complaint as if set forth fully herein.

15. The Plaintiff alleges that on or about January 12, 2012, while acting in the line and scope of her employment with the Defendant, the Plaintiff was caused to suffer injuries when a visitor or guest to the recreation center where she works inexplicably struck her about her head and neck. As a result, Plaintiff sustained injury to her head, neck, shoulder, back and lower extremities. Said injury/injuries causes pain and affects and interferes with the efficiency of the body as a whole.

16. At the time of said accident, the Plaintiff worked as a recreation leader. The Plaintiff avers that she suffered this injury within the line and scope

of her employment with the Defendant.

17. The Plaintiff further alleges that as a result of said accident, she has incurred medical, doctor and prescription expenses.

18. The Plaintiff further alleges that she has lost wages from her employment and the earning capacity of the Plaintiff has been permanently impaired and thus, the Plaintiff claims vocational disability benefits due her under the Workers' Compensation Act of Alabama.

19. The Plaintiff further alleges that her injuries as above-stated were and are the direct and proximate result of the afore-described accidents.

20. The Plaintiff further alleges that at the time of the accident on January 12, 2012, made the basis of this suit, her average weekly earnings were approximately ($450.00), not including overtime or employer-provided fringe benefits.

21. The Plaintiff further alleges that the Defendants and the Plaintiff were at all times material to this case covered by the provisions of the Workers' Compensation Laws of the State of

Alabama.

22.   The Plaintiff further alleges that the Defendants had actual notice or knowledge of said accidents and injuries.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff prays that this Court require proper process to immediately issue requiring the Defendant to answer this Amended Complaint within the time allowed by law and the rules of this Honorable Court as provided under the Workers' Compensation Act, as amended, and that on a final hearing and proof, that the Defendant be required to pay all compensation to which the Plaintiff is entitled, plus reasonable and necessary medical expenses, and for all other proper orders and decrees to which the Court deems that the Plaintiff may be entitled.

ROBERTA BAILEY
Plaintiff

STATE OF ALABAMA)

JEFFERSON COUNTY)

    Before me, the undersigned authority, a notary public, in and for said county in said state, personally appeared ROBERTA BAILEY, who after first by me being duly sworn, deposes and says as follows:

    My name is ROBERTA BAILEY and I am the plaintiff in the above-styled cause. I have read the above Verified Complaint and the allegations and averments contained therein are true and correct to the best of my knowledge, information and belief.

_____
ROBERTA BAILEY

    Sworn to and subscribed before me, this the 23rd day of January, 2012.

_____
NOTARY PUBLIC
My commission expires: 12-1-2013

_____
W. WHITNEY SEALS
Attorney for Plaintiff

OF COUNSEL:
PATE & COCHRUN, L.L.P.
P. O. Box 10448
Birmingham, AL 35202-0448
Telephone: (205) 323-3900
FACSIMILE: (205) 323-3906
filings@plc-law.com

Page 7 of 8

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this the ⟍23rd⟍day of January, 2012, filed the foregoing with the Clerk of the Court using the AlaFile E-system which will send notification of such filing to the following;

Rozalind T. Simon, Esq.
City of Birmingham Dept. of Law
710 North 20th Street
600 City Hall
Birmingham, AL 35203

and I hereby certified that I have mailed the foregoing document by U.S. Mail, postage prepaid, to the following non-AlaFile participants:

NONE

_____
OF COUNSEL

CV-2010904250

**From:** chocolaterose
**Sent:** Monday, August 16, 2021 4:22 PM
**To:** chocolaterose; Kilgore, Brian; brittnany.wilkes@alacourt.gov; brittany.wilkes@alacourt.gov
**Subject:** Fwd: Text File

--------- Forwarded message ---------
From: **Stegall Stegall** <nettiestegall@yahoo.com>
Date: Mon, Aug 16, 2021, 4:20 PM
Subject: Text File
To: Roberta Bailey <chocolaterose65@gmail.com>

| Past Medical Expenses | Best estimate | 250,000.00 |
|---|---|---|
| Future Medical Expenses | Best estimate | 150,000.00 |
| Past Loss Wages | | 224,000.00 |
| Future Loss of Earnings | Best estimate | 385,000.00 |
| Future loss of Benefits & disability pension | 57,600 +186,222.00 = | 243,822.00 |

Loss of Personal disability Pension                        12,500.00
Loss of Personal Business                              1,000,000.00
Compensatory Damage                                      1,000,000.00
Retaliation Future Disability as.                        2,000,000.00
Pain and Suffering                                         1,500.00
Defamation of Charater

Total                                                    $7,165,322.00

Roberta Bailey
114/52 Freda Drive
Midfield Al
35228

## Retirement and Relief Pension System
## Pension Loan Election

A participant who retires and draws a pension upon retirement may be allowed to continue to make payments on his/her pension loan through payroll deduction, but only if: (i) he/she shall post additional collateral approved by the Director of Finance; and (ii) the amount of his/her pension benefit, after any mandatory deductions required under state and federal are deducted, is sufficient to permit the total pension loan installment to be deducted each month. Pension loan payments shall be deducted before any health insurance premiums are deducted. If the pension benefit amount is not sufficient to cover both pension loan payments and health insurance premiums, then arrangements must be made the Office of Personnel to pay those premiums directly or the health insurance coverage will lapse.

I understand that I am required to pay my pension loan balance in full at the time of my retirement or to provide collateral in order to deduct the pension loan payments from my pension check until the loan is paid in full.

**INITIAL ELECTION:**

_____  I elect to repay the balance in full prior to retirement. I understand that the pension board will not approve my pension if the loan is not paid prior to my retirement date.

_KB_____  I elect to pledge some acceptable form of security as collateral as approved by the Director of Finance in order to continue      having my pension loan payments deducted from my pension check.

Print Name:   _Roberta Bailey_

Signature:    _Roberta Bailey_

Date:         _04/26/2012_

Rev. 2010

ELECTRONICALLY FILED
2/8/2013 10:43 AM
CV-2010-904250.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

ROBERTA BAILEY,                        }
                                       }
    Plaintiff,    }
                                       }
                                       }   **CIVIL ACTION NO.**
vs.                                    }
                                       }   **CV-01-2010-904250**
CITY OF BIRMINGHAM, et al.             }
                                       }
    Defendant.     }

## RESPONSE OF DEFENDANT CITY OF BIRMINGHAM TO PLAINTIFF'S FOURTH MOTION TO COMPEL

**COMES NOW** the City of Birmingham, a Municipal corporation existing under the laws of the State of Alabama, Defendant in the above-entitled action and Responds to the Plaintiff's Fourth Motion to Compel as follows:

1.  Defendant received the first request for mileage reimbursement from Plaintiff on November 16, 2012.

2.  Plaintiff presented numerous requests, many of which were duplicative and difficult to decipher.

3.  During the month of December 2012 Defendant made a transition from Millennium Risk Managers to Brentwood Management Group as its Third Party Administrator for workers' compensation claims.

4.  During and as a result of this transition period some payments were unavoidably delayed.

5.  Since the transition Plaintiff has been issued the following checks:

    (1)    On January 22, 2013 a mileage check in the amount of Six Hundred Eighty Three Dollars and Fifty Four Cents ($683.54);

(2)   On January 22, 2013 a check in the amount of One Thousand Seven Hundred Ninety Six Dollars and Sixteen Cents ($1,796.16) representing TTD payments covering the period of December 15, 2012 to January 11, 2013;

(3)   On February 8, 2013 a check in the amount of Four Hundred Forty Nine Dollars and Four Cents ($449.04) representing TTD payments covering the period of January 12, 2013 to January 25, 2013.

6.   The above-described issued payments represent the total payments to which Plaintiff is entitled.


**WHEREFORE PREMISES CONSIDERED,** Defendant prays that this Honorable Court enter an Order **DENYING** Plaintiff's Motion to Compel.


Respectfully submitted,

*s/Rozalind T. Simon, Assistant City Attorney*
Rozalind T. Simon, Attorney for Defendant

**OF COUNSEL:**
**City of Birmingham Department of Law**
710 North 20th Street
600 City Hall
Birmingham, Alabama  35203
(205) 254-2369 (office)
(205) 254-2502 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all parties named herein by electronic filing on this **8**th day of **February**, 2013.

W. Whitney Seals, Esq.
**Pate & Cochrun, L.L.P.**
Post Office Box 10448
Birmingham, Alabama  35202-0448
(205) 323-3900
filings@plc-law.com


*s/Rozalind T. Simon, Assistant City Attorney*
OF COUNSEL

ELECTRONICALLY FILED
1/25/2013 7:32 AM
CV-2010-904250.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

**IN THE CIRCUIT COURT OF JEFFERSON  COUNTY, ALABAMA**

ROBERTA BAILEY,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )    CV-10-904250
                                   )    <u>THIS MATTER IS SET FOR A</u>
CITY OF BIRMINGHAM ET AL.,         )    <u>HEARING ON FRIDAY</u>
                                   )    <u>FEBRUARY 8, 2013 AT</u>
        DEFENDANT.                 )    <u>11:30 A.M.</u>

---

**PLAINTIFF'S AMENDED FOURTH MOTION TO COMPEL**

---

**COMES NOW** The Plaintiff in the above-styled cause and respectfully requests that this Court enter an Order compelling the Defendant to reimburse Plaintiff for the mileage costs she has incurred going to and from her medical appointments; to pay her accrued temporary total disability benefits; to pay her the full amount of accrued past temporary total disability benefits; and to reimburse Plaintiff's health insurer for the money it spent on healthcare related to Plaintiff's compensable workers' compensation claim.  As grounds, Plaintiff states as follows:

**I.    MILEAGE BENEFITS**

1.    This is a workers' compensation case.

2.    Ala. Code § 25-5-77(f) provides that "The employer

Page 1 of  6

shall pay mileage costs to and from medical and rehabilitation providers at the same rate as provided by law for official state travel."

3. The adjuster handling this case for the Defendant, Rosemary Ward-Steele received Plaintiff's request for reimbursement of mileage on November 16, 2012. (*See* email string between undersigned counsel and adjuster Rosemary Ward-Steele attached hereto as "Exhibit A").

4. Despite receiving Plaintiff's request for reimbursement on November 16, 2012, Plaintiff has yet to be reimbursed for her mileage as required by law.

## II.  ACCRUED TEMPORARY TOTAL DISABILITY BENEFITS

5. After a hearing regarding the compensability of Plaintiff's claim, this Court entered an Order on February 8, 2012 finding Plaintiff's claim to be compensable.

6. Plaintiff has not been placed at maximum medical improvement by her authorized treating physician.

7. Plaintiff last received a check for temporary total disability benefits on or about January 5,

2013.  That check paid her benefits through the end of December.  Plaintiff has yet to receive a temporary total disability benefits check for the weeks that have accrued since January 1, 2013.

8.    Plaintiff's financial situation is precarious. Without the temporary total disability benefits checks, Plaintiff possibly could lose her home.

III.    **PAYMENT OF THE FULL AMOUNT OF ACCRUED BENEFITS**

9.    On or about July 2012, Plaintiff was prescribed physical therapy by her authorized treating physician.

10.   Despite having to reschedule several visits for various reasons, Plaintiff completed her physical therapy as prescribed by her authorized treating physician.

11.   Despite completing her therapy, Defendant reduced Plaintiff's temporary total disability benefit checks during her prescribed therapy for "non-compliance" as that term is used in Ala. Code § 25-5-77.

12.   Said non-compliance was based on Plaintiff's missing or rescheduling appointments.

13. Ala. Code § 25-5-77(b) provides that if an employee refuses to comply with any reasonable request for medical treatment by the employer, his or her right to compensation shall be suspended and no compensation shall be payable for the period of such refusal.

14. Plaintiff has never refused treatment and, in fact, completed her physical therapy as prescribed.

15. Defendant's use of the term "non-compliance" for Plaintiff's rescheduling appointments is beyond the scope of Ala. Code § 25-5-77(b).

16. Defendant owes Plaintiff the full amounts of her temporary total disability benefits for the time period it wrongly claims she was "non-compliant."

17. Correspondence regarding this matter is attached hereto collectively as "Exhibit B."

IV. **REIMBURSEMENT OF MONEY PAID BY BLUE CROSS BLUE SHIELD**

18. After a hearing on compensability, this Court included the following provision in its February 8, 2012 Order:

Defendant shall pay for any medical treatment rendered to Plaintiff to diagnose or treat her

injuries suffered on or about February 16, 2011.

19. Despite repeated requests, Defendant has yet to reimburse Blue Cross Blue Shield for the money they paid to Plaintiff's medical providers for injuries she sustained on the job.

20. Attached to this motion as "Exhibit C" is a letter dated November 1, 2012 indicating that Blue Cross has paid $8,122.55 that has not been reimbursed by the City as this Court Ordered.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully requests that this Honorable Court enter an Order enter an Order compelling the Defendant to reimburse Plaintiff's mileage pursuant to the Workers' Compensation Act; to pay her accrued temporary total disability benefits; to pay the full amount of her past accrued temporary total disability benefits; to reimburse her health insurer for the money they spent on her medical care as a result of her on the job injury and for any other relief that this Court deems appropriate.

_/s/ W. Whitney Seals_
W. WHITNEY SEALS
Attorney for Plaintiff

Page 5 of 6

**OF COUNSEL:**

**PATE COCHRUN, L.L.P.**
P. O. Box 10448
Birmingham, AL 352092-0448
Telephone: (205) 323-3900
FACSIMILE: (205) 323-3906
filings@plc-law.com

### NOTICE OF HEARING

**THIS MATTER IS SET FOR A HEARING ON FRIDAY, FEBRUARY 8, 2013, AT 11:30 A.M. IN FRONT OF HON. HOUSTON BROWN.**

### CERTIFICATE OF SERVICE

I do hereby certify that I have on this the 25th day of January 2013, I filed the foregoing with the Clerk of the Court using the AlaFile E-system which will send notification of such filing to the following:

Rozalind T. Simon, Esq.
Michael Fliegel, Esq.
City of Birmingham Dept. of Law
710 North 20th Street
600 City Hall
Birmingham, AL 35203

and I hereby certified that I have mailed the foregoing document by U.S. Mail, postage prepaid, to the following non-AlaFile participants:

NONE

_____/s/ W. Whitney Seals_____
OF COUNSEL

EXHIBIT 'A'

## Whitney Seals

**From:**   Whitney Seals [whitney@plc-law.com]
**Sent:**   Wednesday, December 19, 2012 3:09 PM
**To:**   'Rosemary Ward-Steele'
·**Subject:** RE: Roberta Bailey

Mrs. Steele:

Please have a check issued before the end of the month or I won't have much choice but to file a motion to compel.

Thanks,

W. Whitney Seals
Pate & Cochrun, LLP
P.O. Box 10448
Birmingham, AL 35202-0448
(205) 323-3900

---

**From:** Rosemary Ward-Steele [mailto:rstee@mrm-llc.com]
Sent: Wednesday, December 19, 2012 3:00 PM
**To:** 'Whitney Seals'
**Subject:** RE: Roberta Bailey

Not really.

*Rosemary Steele*
*Workers' Compensation*
*Claims Adjuster Supervisor*
*Millennium Risk Managers*
*Po Box 43769*
*Birmingham, AL 35243*
*205-451-0812 ext 150*
*205-380-0261 Fax*

---

**From:** Whitney Seals [mailto:whitney@plc-law.com]
**Sent:** Wednesday, December 19, 2012 2:29 PM
**To:** 'Rosemary Ward-Steele'
**Subject:** RE: Roberta Bailey

Ms. Steele:

Do we have a time frame that I can tell Ms. Bailey?

Thanks,

W. Whitney Seals
Pate & Cochrun, LLP

1/8/2013



CITY OF BIRMINGHAM

## RETIREMENT & RELIEF SYSTEM

**BOARD OF MANAGERS**
Mayor William A. Bell, Sr.
Rick Lessley
Kevin Moore
David Toney
Martin Leonard
B. Allen Treadaway
Catina Williams
Ronald Vaughn
Nell Roberts

A-100 CITY HALL BUILDING
710 NORTH 20TH STREET
BIRMINGHAM, ALABAMA 35203-2227
(205) 254-2205
(205) 254-2937 FAX

**SECRETARY**
Lorren Oliver

**June 14, 2012**

**TREASURER**
J. Thomas Barnett, Jr.

**Ms. Roberta Bailey**
**1452 Freda Drive**
**Midfield, AL 35228**

**Dear Ms. Bailey:**

The City of Birmingham Retirement & Relief System Board Members, at their meeting on June 13, 2012, CONTINUED your application for EXTRAORDINARY DISABILITY at the rate of $1,551.85 per month, effective January 13, 2012, under the provisions of Article VI, Section 8 of the pension law until next month's Board Meeting.

Yours Truly,

**Lorren Oliver**
**Secretary**

cc:    **Office of Personnel**
       **Birmingham City Hall**

LO/tg

E-File Receipt

| County:01 |
| Case Number:CV201090425000 |
| Style:ROBERTA BAILEY V. CITY OF BIRMINGHAM |
| Document Filed:AMENDED COMPLAINT |
| Electronic Document Stamp:CV2010904250001/23/2012 4:10:07 PMb54040f5-485a-4514-af46-a70ca257a61d |

**The following Documents were attached to this filing:**

| Title | Description | Location |
|---|---|---|
| AMENDED COMPLAINT | Plaintiff's Amended Complaint to Add a Count | 20120123151755190.pdf |

Continue

# PENSION  WORKSHEET

**NAME OF RETIREE:** _Roberta Bailey_
_Retirement Date_ 1/13/2016

**STARTING MONTHLY PENSION: $** _1,551.85_

**Monthly Deductions:**

*Pension Loan Payment:*           $ _69.07_

*Estimated Federal Taxes:*        $ _0_

*Health Insurance Premium:*       $ _____

*Dental Insurance Premium:*       $ _____

*Life Insurance Premium:*         $ _____

*Credit Union Loan:*              $ _0_

**TOTAL MONTHLY DEDUCTIONS:**     $ _____

**NET MONTHLY PENSION: $** _____

**LUMP SUM D.R.O.P PAYMENT EXCLUDING WITHHOLDING TAX:**

$ _N/A_

*[ D.R.O.P  payments will be made within 30 to 90 days of your retirement date ]*

14

## Whitney Seals

**From:**    Simon, Rozalind T. [Rozalind.Simon@ci.birmingham.al.us]
**Sent:**    Wednesday, March 21, 2012 10:59 AM
**To:**      Whitney Seals
**Subject:** RE: Roberta Bailey

I am not sure of whom Ms. Bailey spoke with but that is not correct.

Ms. Bailey should go to see Ms. Sandra "Sandy" Roberts in the finance department to make application for ordinary or extraordinary disability benefits. Ms. Roberts' number is 254-2431. I have just checked with her office and am told that she is out of the office until Monday. I guess a number of people are taking spring break off. I would suggest that Ms. Bailey call Ms. Roberts on Monday to schedule an appointment to meet with her. Ms. Roberts has all the necessary forms and instructions for application for disability benefits; and, she is willing to carefully go over each form with her. This, however, can take some time so it is best that she schedule an appointment  Ms. Roberts is willing to speak with her if she just drops by, but it may mean that she has to wait.

Rozalind

**From:** Whitney Seals [mailto:whitney@plc-law.com]
**Sent:** Monday, March 19, 2012 3:28 PM
**To:** Simon, Rozalind T.
**Subject:** Roberta Bailey

Ms. Simon:

My client called me today. She wants to apply for disability through the City. Her understanding from the City is that she cannot get those papers, but I must request them from you. That is what the City is telling her.

If so, can you send me any disability application?

Thanks.

W. Whitney Seals
Pate & Cochrun, LLP
P.O. Box 10448
Birmingham, AL 35202-0448
(205) 323-3900



**CITY OF BIRMINGHAM**

## RETIREMENT & RELIEF SYSTEM

A-100 CITY HALL BUILDING
710 NORTH 20TH STREET
BIRMINGHAM, ALABAMA 35203-2227
(205) 254-2205
(205) 254-2937 FAX

**BOARD OF MANAGERS**
Mayor William A. Bell, Sr.
Rick Lessley
Kevin Moore
David Toney
Martin Leonard
B. Allen Treadaway
Catina Williams
Ronald Vaughn
Nell Roberts

**SECRETARY**
Lorren Oliver

**TREASURER**
J. Thomas Barnett, Jr.

**May 10, 2012**

Ms. Roberta Bailey
1452 Freda Drive
Midfield, AL 35228

Dear Ms. Bailey:

The City of Birmingham Retirement and Relief System Board Members, at their meeting on May 9, 2012, CONTINUED your application for EXTRAORDINARY DISABILITY at the rate of $1,551.85 per month, effective January 13, 2012, under the provisions of Article VI, Section 8 of the pension law until next month's Board Meeting.

Yours Truly,

Lorren Oliver
Secretary

cc:     Office of Personnel
        Birmingham City Hall


LO/tg

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this the 21st day of March, 2012, filed the foregoing with the Clerk of the Court using the AlaFile E-system which will send notification of such filing to the following;

Rozalind T. Simon, Esq.
Michael Fliegel, Esq.
City of Birmingham Dept. of Law
710 North 20th Street
600 City Hall
Birmingham, AL 35203

and I hereby certified that I have mailed the foregoing document by U.S. Mail, postage prepaid, to the following non-AlaFile participants:

NONE

_____/s/  W.  Whitney Seals_____
OF COUNSEL